IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

THUSHUNDA R. MARKS                                                    PLAINTIFF

v.                              Case No. 1:24-cv-1011

CITY OF EL DORADO, ARKANSAS                                          DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Before the Court is a Motion for Summary Judgment filed by Defendant City of El Dorado, Arkansas.  ECF No. 29.  Plaintiff Thushunda R. Marks has responded.  ECF No. 34.  Defendant has filed a reply.  ECF No. 40.  The Court finds the matter ripe for consideration.

**I. BACKGROUND**

The following facts are either uncontested or viewed in the light most favorable to Plaintiff. Plaintiff was employed by El Dorado Water Utilities[1] ("Water Department") as a cashier/office clerk from May 2018 through February 3, 2023.  On January 31, 2023, Plaintiff's second-line supervisor observed Plaintiff using her cell phone during working hours in a working area, which was against the Water Department's cell phone policy.  ECF No. 31-5, ¶ 1.  According to Plaintiff, she was checking the weather app for information about a snowstorm.

Plaintiff was off work on February 1, 2023, because she had no childcare that day.  When Plaintiff returned to work on February 2, 2023, Plaintiff's second-line supervisor issued Plaintiff a Notice of Verbal Warning for violation of the cell phone policy, which Plaintiff refused to sign.

After receiving the Notice of Verbal Warning on February 2, 2023, Plaintiff, who was wearing a medical boot on her foot, took sick leave for the remainder of the day.  After leaving work, Plaintiff called her second-line supervisor to ask if she needed a doctor's note for her sick

---

[1]El Dorado Water Utilities is a city-owned utility within the Public Works Department of the City of El Dorado, Arkansas.

leave, and her supervisor confirmed that she would need a doctor's note upon her return to work. Plaintiff testified in her deposition that on February 2, 2023, she told her second-line supervisor over the phone that she would not be returning to work until February 9, 2023.  Defendant, however, maintains that Plaintiff did not notify any supervisor that she would need to be off work until February 9, 2023.  According to Plaintiff, her second-line supervisor knew Plaintiff left work on February 2, 2023, because of her "medical condition."  ECF No. 36, p. 1.  The next day, February 3, 2023, Plaintiff did not call in or report for work, and she was terminated.  In the past, Plaintiff had routinely texted her first-line supervisor when she was going to miss work.

Plaintiff testified in her deposition that she saw Dr. D'Orsay Bryant on February 2, 2023, but there is no record of that visit.  Plaintiff's medical records confirmed that she saw Dr. Bryant on January 31, 2023.  At this visit, Dr. Bryant provided Plaintiff with the MRI results of her left ankle and noted that Plaintiff had plantar fasciitis and persistent left heel pain.  ECF No. 31-15. Dr. Bryant's notes stated, "Conservative treatment is indicated.  She was referred to physical therapy.  She will follow up in six weeks."  ECF No. 31-15.

On February 6, 2023, Plaintiff texted her first-line supervisor to see if she had received the "excuse" that Dr. Bryant's office had faxed to the Water Department.  Plaintiff's first-line supervisor maintains that the Water Department never received the faxed note from Dr. Bryant. On February 7, 2023, Plaintiff texted her first-line supervisor a photo of a January 31, 2023 doctor's note.  Plaintiff's text also stated, "This is my copy of the dr excuse that was faxed Friday. You said you didn't hear from me this is my proof and I also texted your phone.  I got no response from you."  ECF No. 31-11.

The doctor's note that Plaintiff texted to her first-line supervisor on February 7, 2023, states the date (January 31, 2023), Plaintiff's name, and that she could return to work on February 9,

2023.  The note is signed by Dr. Bryant.  The note contains no information regarding the reason for Plaintiff's absence from work and does not mention any diagnosis or medical condition.  When asked in her deposition whether the Dr. Bryant's January 31, 2023 note was the basis of her claim under the Family and Medical Leave Act ("FMLA"), Plaintiff responded, "No."  ECF No. 31-1, p. 15.  Plaintiff then explained that Dr. Bryant did not actually issue the note on January 31, 2023, but instead issued the note on February 2, 2023, and backdated it to January 31, 2023.  Plaintiff further testified that her serious health condition on February 2, 2023, was tendinitis and plantar fasciitis, which was an issue because she is diabetic.  ECF No. 31-1, p. 18.  Plaintiff did not complete any FMLA paperwork for leave in January or February 2023 and never specifically requested any FMLA leave during that timeframe.

On February 12, 2024, Plaintiff filed her complaint, alleging Defendant interfered with her FMLA rights and discriminated against her because she attempted to exercise her FMLA rights.[2] Defendant now moves for summary judgment as to both FMLA claims.

## II. STANDARD OF REVIEW

The standard for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is material only when its resolution affects the outcome of the case under the governing law.

---

[2]Plaintiff also included in her complaint claims for race discrimination and retaliation.  Plaintiff, however, states that she is not pursuing those claims.  ECF No. 35, p. 1.

3

*Id*. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial."  *Id*. at 256.  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving part's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007).

### III. DISCUSSION

Plaintiff alleges that Defendant interfered with her attempt to exercise her FMLA rights and discriminated against her because she attempted to exercise those rights.  Defendant argues that it is entitled to summary judgment on both claims because Plaintiff did not provide notice of her need for FMLA leave, she did not engage in a protected activity, and Defendant terminated Plaintiff for reasons unrelated to the purported FMLA leave.

The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period" for various family or medical circumstances.  29 U.S.C. § 2612(a)(1).  The FMLA holds that it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the

4

attempt to exercise, any right" under the FMLA, or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 1615(a)(1)-(2).

There are three types of claims arising under the FMLA: (1) where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act (an entitlement or interference claim); (2) where an employee opposes any practice made unlawful under the FMLA and the employer retaliates against the employee (a retaliation claim); and (3) where an employer takes adverse action against an employee because the employee exercises rights to which she is entitled under the FMLA (a discrimination claim). *Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023). The Court will separately address Plaintiff's interference claim and discrimination claim.

### A. Interference Claim

Plaintiff alleges that Defendant violated the FMLA by terminating her while she was on FMLA leave. Defendant argues it is entitled to summary judgment on this claim because Plaintiff was not eligible for FMLA leave and did not provide adequate notice of her need for FMLA leave.

An interference claim requires a plaintiff to show that: 1) they were eligible for FMLA leave, 2) that the defendant was on notice of the need for FMLA leave, and 3) that the defendant denied the plaintiff benefits to which they were entitled under the FMLA. *See Boston*, 75 F.4th at 869. "An employee proceeding on this theory need not show that an employer acted with discriminatory intent." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012).

### 1. Serious Health Condition

Defendant argues that Plaintiff was not eligible for FMLA leave because she did not suffer from a serious medical condition. The FMLA allows eligible employees to take unpaid leave

"[b]ecause of a serious health condition that makes the employee unable to perform the functions of [their] position."  29 U.S.C. § 2615(a)(1)(D).  Under the Department of Labor's regulations, a serious health condition is "an illness, injury, impairment or physical or mental condition" that involves either inpatient care or "continuing treatment by a health care provider as defined in [29 C.F.R.] § 825.115."  29 C.F.R. § 825.113(a) (2013).  Plaintiff claims that she has a serious health condition under the "continuing treatment" prong of the regulations.[3]  Plaintiff bears the burden of establishing that she had a serious health condition entitling her to FMLA leave.  *See Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012).

> A serious health condition involving continuing treatment includes, in pertinent part:
>
> (a) *Incapacity and treatment.*  A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (1) Treatment two or more times, within 30 days of incapacity, unless extenuating circumstances exist, by a health care provider . . . ; or
>>
>> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a).  In her response to Defendant's summary judgment motion, Plaintiff does not identify the serious health condition entitling her to FMLA leave.  The Court infers that it was plantar fasciitis as documented in her medical records.  In her deposition, Plaintiff testified that her serious health condition was tendinitis and plantar fasciitis combined with the fact that she is a diabetic.

There is documentation that Plaintiff visited Dr. Bryant on January 31, 2023, and Dr. Bryant's impression indicated left foot plantar fasciitis.  His notes read, "Conservative treatment

---

[3]The Court notes that Plaintiff does not argue that she suffers from a "chronic serious health condition" that requires periodic visits to a health care provider, continues over an extended period of time, and may cause "episodic rather than a continuing period of incapacity."  29 C.F.R. § 825.115(c)

is indicated. She was referred to physical therapy. She will follow up in six weeks." ECF No. 31-15.

Plaintiff rather tersely argues that because her doctor excused her from work from February 2-9, 2023, she was suffering from a serious health condition. Plaintiff, however, has produced no evidence indicating that the plantar fasciitis required her absence from work or that she received continuing treatment by a health care provider in February 2023. Plaintiff's analysis essentially consists of a recitation of the definition of continuing treatment under 29 C.F.R. § 825.115 and a conclusory assertion that she qualified for FMLA leave because Dr. Bryant wrote her an excuse from work for February 2-9, 2023. ECF No. 35, pp. 4-5. Plaintiff never specifically identifies the condition which she asserts qualifies a serious health condition, but instead simply refers to the fact that she was wearing a medical boot.

Plaintiff visited Dr. Bryant once on January 31, 2023, and he referred her to physical therapy with directions to follow up with him in six weeks. Dr. Bryant's note that Plaintiff should be excused from work does not state that it is related to her plantar fasciitis. Further, Plaintiff came to work on February 2, 2023, which indicates that Plaintiff was perhaps capable of performing the duties of her position after being diagnosed with plantar fasciitis. Although Plaintiff testified in her deposition that she also saw Dr. Bryant on February 2, 2023, there is no record of this alleged visit to corroborate Plaintiff's self-serving testimony. Plaintiff provides no evidence that would support a finding by the Court that Plaintiff visited Dr. Bryant at least twice within thirty days of her impairment or that her visit with Dr. Bryant resulted in a regimen of continuing treatment under his supervision. Thus, Plaintiff fails to meet her burden of establishing that she suffered from a serious health condition as defined by 29 C.F.R. § 825.115 at the time of her termination. In other words, the evidence is insufficient for a reasonable jury to find that Plaintiff suffered from a serious

health condition.  Consequently, the Court cannot find that Plaintiff was eligible for FMLA benefits at the time of her termination.

### 2. Notice

Even if Plaintiff could show she was eligible for FMLA benefits at the time of her termination, she also must prove that Defendant was on notice that she needed to take FMLA leave. "A claim under the FMLA cannot succeed unless the plaintiff can show that [she] gave [her] employer adequate and timely notice of [her] need for leave . . . ." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1115 (8th Cir. 2012).  "An employee does not need to 'invoke the FMLA by name.'" *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 621 (8th Cir. 2025) (quoting *Thorson v. Gemini, Inc.*, 205 F.3d 370, 381 (8th Cir. 2000)).  "Rather, 'the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave.'" *Id.* (quoting *Thorson*, 205 F.3d at 381).

"Because a serious health condition is a prerequisite for FMLA leave, an employee must provide information to the employer 'to suggest that [her] health condition could be serious.'" *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 472 (8th Cir. 2007) (quoting *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990-91 (8th Cir. 2005)).  "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask*, 509 F.3d at 472 (citing *Woods*, 409 F.3d at 991).  "Employees have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position." *Bosley v. Cargill Meat Sols. Corp.*, 705 F.3d 777, 780-81 (8th Cir. 2013) (quoting *Brown v. Kan. City Freightliner Sales, Inc.*, 617 F.3d 995, 997 (8th Cir. 2010)).

Plaintiff argues that she was not given sufficient time to notify her employer of the extent

8

of her leave because she was terminated one day after her leave began.  Plaintiff further argues that her supervisor was on notice of her need for FMLA leave because she knew Plaintiff was walking in a medical boot and had been for one month.  Plaintiff told her supervisor on February 2, 2023, that she wanted to take sick leave for the remainder of the day.  Her supervisor said that she could.  Plaintiff did not communicate with the Water Department again until after her termination when she provided the note from Dr. Bryant, which contained no information about Plaintiff's illness, condition, or injury.  The scant information in the doctor's note does not allow Defendant to differentiate Plaintiff's leave from routine sick leave.  The fact that Plaintiff was wearing a boot does not give sufficient notice that she suffered from a serious health condition, especially given that Plaintiff was present at work and performing her job duties during the month she was wearing the boot.  Further, it appears that Plaintiff was diagnosed with plantar fasciitis on January 31, 2023, so it was possible for her to give her supervisor notice on February 2, 2023, that she was suffering from a serious health condition.  Plaintiff never did so.  She failed to explain the need and reason for her leave, and thus the Court finds that the evidence is insufficient for a reasonable jury to find that Plaintiff gave Defendant adequate notice under the FMLA.  *See Woods*, 409 F.3d 984, 992-93 (8th Cir. 2005) (holding that two doctor's notes stating employee was "advised to remain off work" were inadequate to give notice of the need for FMLA leave because the notes did not mention the nature of the illness).

Because Plaintiff has not provided sufficient evidence that she suffered from a serious health condition or that Defendant was on notice of the need for FMLA leave, her interference claim fails as a matter of law.

**B. Discrimination Claim**

Plaintiff alleges that Defendant violated the FMLA by terminating her employment in

9

response to her taking FMLA leave.  An FMLA discrimination claim "arises when an employer takes adverse action against an employee because the employee exercises rights to which [she] is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006.  A discrimination claim requires showing "that the employer was motivated by the employee's exercise of rights under the FMLA." *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 866 (8th Cir. 2015).  "Using FMLA leave 'does not give an employee any greater protection against termination for reasons unrelated to the FMLA than was available before." *Id.* (quoting *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1090 (8th Cir. 2014)).

In the present case, the record contains no direct evidence of discrimination.  Without direct evidence, a plaintiff must proceed under a burden-shifting framework.  *See Siebrecht v. Mercy Health Serv. - Iowa Corp.*, 163 F.4th 524, 534 (8th Cir. 2016).  The first step requires establishing a prima facie case by showing that:  1) the plaintiff engaged in activity protected by the FMLA, 2) the plaintiff suffered an adverse employment action, and 3) a causal connection exists between the protected activity and the adverse employment action.  *See id*.  Defendant argues that Plaintiff fails to meet her burden on the first and third prongs of the prima facie case, contending that she has not shown that she was engaged in protected conduct or that there was a causal connection between the protected conduct she alleges and her termination.

The causal connection element is ultimately a question of "whether the evidence 'gives rise to an inference of a retaliatory motive.'"  *Huber*, 139 F.4th 615 (quoting *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006)).  If a plaintiff establishes their prima facie case, "the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse action." *Siebrecht*, 163 F.4th at 534.  "[I]f the employer satisfies its burden, the employee must present evidence that creates an issue of fact as to whether the employer's reason was pretext for

10

discrimination." *Id*.

Plaintiff's discrimination claim fails for the same reasons as her interference claim: (1) Plaintiff did not provide adequate notice to Defendant that she needed FMLA leave; and (2) she did not suffer from a serious health condition. "An employee's meeting his or her notice obligation to an employer of a need for FMLA leave is essential to a FMLA retaliation [or discrimination] claim." *Bosley*, 705 F.3d at 784 (citing *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1000 (8th Cir. 2011)). The Court has already found that there was no genuine issue of material fact regarding Plaintiff's failure to meet her notice obligation while employed. Because Defendant had no notice of Plaintiff's purported need to take FMLA leave, the decision to terminate her could not have been motivated by any attempt to exercise her FMLA rights. *See id.* Further, Plaintiff's discrimination claim is "necessarily predicated on the existence of a qualifying serious health condition," and the Court has already found that Plaintiff has not provided sufficient evidence for a reasonable jury to conclude that she suffered from a serious health condition. *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514 (8th Cir. 2015); *see Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1195 (8th Cir. 2000) ("Where an employe has not shown his absences to be a result of a serious health condition, he is not protected by the FMLA."). Thus, the Court cannot find that Plaintiff engaged in protected activity. Accordingly, the Court finds that Plaintiff fails to make a prima facie case for FMLA discrimination, and thus Defendant is entitled to summary judgment on this claim.[4]

---

[4]Even if Plaintiff could establish a prima facie case of discrimination, the Court would find that Defendant has presented sufficient evidence of a legitimate, nondiscriminatory reason for her termination: Plaintiff failed to report to work on February 3, 2023, and failed to notify a supervisory of her absence as required. The Court would further find that Plaintiff has not provided sufficient evidence for a reasonable jury to conclude that Defendant's reason was pretext for discrimination.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 29) should be and hereby is **GRANTED**.  Plaintiff's claims hereby are **DISMISSED WITH PREJUDICE**.  A judgment of even date shall issue.

**IT IS SO ORDERED**, this 15th day of June, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge

12